Sneed, J.,
delivered the opinion of the Court.
This was an action of debt upon a note under seal, executed by the testator of the plaintiff in error to W. W. Woodfolk, on the 31st December, 1841, and due one day after date, for $1,629.28, and by the said payee assigned to the defendant in error, on the 15th of March, 1867, who commenced this action on the 18th of April, 1867. Upon the note were endorsed three payments, each in the handwriting of the payee, Wood-folk; the first for $1000, dated July 12th, 1849; the second, dated April 12th, 1850, for $500; and the third for $100, dated the 15th February, 1858. The verdict and judgment were for the plaintiff below for the balance of debt, $29.28, and damages, in the way of interest, $1,859.27. The defendant appealed in error, and rests her defence mainly upon the presumption of payment from the lapse of time. Upon this subject the Circuit Judge, among other things, charged the jury, that “evidence of the relationship • and other dealings of the parties, and political disturbances, such as a war between the country of the maker and that of the payee, or civil war overruling the civil law, will bar the legal presumption arising from the lapse of time.” It having been shown in the proof that the maker and the payee of the note were brothers-in-law, and upon terms of most friendly intimacy; and it being a circumstance judicially known that in the *181 State of Tennessee, where both parties resided, “a civil war, which overruled the civil law/’ was flagrant during several years of the period of time relied upon to create the presumption of payment, it is to be presumed that this portion of the charge was not without its material effect upon the minds of the jury in arriving at the verdict in the cause.
It has long been a rule of evidence in this State, applicable to obligations under seal, for the payment of money, which were executed prior to the statute which abrogated the special common law sanctity of a sealed instrument, that the lapse of a period of sixteen years from the maturity of such an instrument, without some explanatory circumstance, would raise a presumption that such obligation had been paid and satisfied. This presumption is the creature of the common law, and reposes upon the same sound policy which first suggested to the British Parliament, in the reign of James I., the propriety of enacting the celebrated statute of 21 Jac. 1 c., 16, entitled “an act for limitation of actions and for avoiding suits at law,” from which all our statutes of limitations have been derived. Before the English statute referred to, by the theory and early practice of the common law, a party having any legal demand against another, might call him to answer in the Courts at any time that suited his convenience. It was found, however, that such a practice often resulted in great injustice, as evil-disposed persons would fabricate claims and abide a convenient time to exact their unjust demands, when, from long lapse of years, evidences were lost, witnesses or parties had died,, and *182 the memories of living witnesses had failed. Though not a statute of limitations, yet this presumption is a defence no less reliable, and no less favored in the law, and in its analogies to the statute of limitations, is, in practice, regulated by like rules. Thus, it is said, it derives from the law a certain technical force and effect which Courts and - juries cannot disregard. Until rebutted or displaced by evidence, it has all the force and effect of plenary proof of the fact. of payment, and the jury are bound so to regard it: Thompson v. Thompson, 2 Head, 405.
There are presumptions which are conclusive and such as are disputable. They are classified in the law so that they may not be misunderstood or confounded. They are conclusive when the law makes an inference so peremtorily that it will not allow it to be overturned by any contrary proof, however strong: Best on Pres., 20. And they are disputable when the law makes an inference which will stand until invalidated by proof: 4 Johns. Ch. B.., 287; 2 Bouv. L. D., 368. The presumption of the payment of a debt from lapse of time, is of the latter class. It may be repelled and rebutted- by the proof of a variety of circumstances — as recognition, a new promise, a partial payment, a discharge of interest, or any other circumstance strong enough to repel the presumption that from long delay and lapse of time the debt has been paid. These are substantive facts, which, if shown in proof, will destroy and break down this arbitrary presumption. But there are inferences from other circumstances which may be called counter presumptions, *183 all of which are proper to be considered by a jury in arriving at a conclusion, whether a debt has or has not been paid — when the only evidence of payment is the long lapse of time, and among these the relationship-of the parties is one — as from the simple fact of relationship the inference might be drawn that a longer indulgence would be extended than in other cases. And so the intimate business connections and dealings of the-creditor and debtor, from which a like 'inference might be deduced. Or a state of civil war in the country where the parties reside, as the opportunities for payment would in such ease be supposed to be cut off and prevented. These counter presumptions are proper to to be considered by the jury in connection with all the other facts pf the case. But it is for jury and not the Court to judge of their conclusiveness. There is a distinction in such cases to be observed as to the character of this presumption. It is said that in regard to presumptions of law, a certain inference must be made whenever the facts appear which furnish the basis of the inference; while in case of other presumptions, a discretion more or less extensive is vested in the tribunal as to drawing the inference. As to presumptions of law the Court may draw the inference whenever the requisite facts are developed in the pleadings: Steph. PL, 382; while all other presumptions can be made only by the intervention of a jury. Presumptions of law, it is said, are reduced to fixed rules, and form a part of the jurisprudence to which they belong; presumptions of fact are derived wholly and directly from the circum *184 stances of the particular case by means of the common experience of mankind; 2 Stark. Ev., 684; 6 Am. Law Mag., 370; 35 Penn. Et. B.., 440. The fact that the parties are nearly related, or that a civil war was flagrant in the country of their residence might generate a presumption of non-payment that might or might not be suificient to countervail the opposite presumption. This is matter for the jury, and it may gather strength or weakness from other circumstances in the cause, all of which must be considered together.
The charge of the Court tested by these principles is clearly erroneous. It undertakes to pronounce upon the conclusiveness of the presumption arising from the relationship of the parties, and of the inference also deducible from - a state of civil war. The Court assumes that these circumstances will repel absolutely the legal presumption of payment arising from the lapse of time, instead of submitting that question to the judgment of the jury who were the triers of the fact. The defendant in this portion of the charge, so far from having a correct exposition of the law, was by these few words summarily deprived of the whole benefit of his defence; for nothing is left to the discretion of the jury, and they could do nothing less than pronounce this verdict against him.
For this error the judgment is revérsed and a new trial awarded.